UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAMMY KATHLEEN RICK

                                  Plaintiff,                          19-CV-273Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on July 15, 2015, alleging disability beginning May 1, 2014, at the age of 55, due to rheumatoid arthritis, diabetes, high blood pressure and high cholesterol. Dkt. #4, p.73

On November 13, 2017, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Rachel Duchon, at an administrative

hearing before Administrative Law Judge ("ALJ"), Lynette Gohr. Dkt. #4, pp.32-71. Plaintiff's attorney advised the ALJ that plaintiff was claiming rheumatoid arthritis, osteoarthritis, fibromyalgia, myofascial pain, hypertension, diabetes, stage 2 kidney disease, obesity and depression as severe impairments. Dkt. #4, p.37. Plaintiff testified that she has a high school diploma. Dkt. #4, pp.37-38. She lives with her husband and mother in an apartment. Dkt. #4, p.41. Plaintiff had been working at a sandwich shop, but had to stop working when she began to experience burning in her legs when she was standing and difficulty reaching, lifting and grasping things on her right side. Dkt. #4, pp.38-40. Plaintiff testified that everything hurts, including her knuckles, elbows, shoulders and neck. Dkt. #4, p.57. She cannot lift more than 5 pounds or walk or stand more than 5 or 10 minutes before she needs to rest. Dkt. #4, p.58. She walks with a cane. Dkt. #4, pp.40-41. She cannot zip her coat or button things and has to wear velcro shoes. Dkt. #4, pp.47 & 59. She needs help with personal care sometimes when her arm won't bend or her hip is stiff. Dkt. #4, p. 48. She is able to cook, wash dishes, dust, make the bed and wash laundry, but her husband carries the baskets and vacuums. Dkt. #4, pp.48-49 & 51.

      The VE classified plaintiff's past work as a sandwich maker as unskilled, medium exertion work which was performed by plaintiff at the light exertion level. Dkt. #4, p.65. When asked to assume an individual of plaintiff's age, education and relevant work history who was capable of working at the medium exertion level and could occasionally climb ramps and stairs and reach overhead bilaterally but who could never climb ladders, ropes or scaffolds and must avoid concentrated exposure to extreme heat, extreme cold, wetness and humidity, the VE testified that such an individual could

perform plaintiff's past jobs, both as plaintiff performed them and as they are typically performed within the national economy. Dkt. #4, p.66. In addition, the VE tetified that such an individual could work as an industrial cleaner, hospital food service worker, and linen room attendant, each of which are unskilled, medium exertion positions. Dkt. #4, pp.66-67. If plaintiff was limited to frequent handling and fingering bilaterally, the VE testified that plaintiff would not be able to perform her past work or any of the positions suggested. Dkt. #4, pp.67-68.

The ALJ rendered a decision that plaintiff was not disabled on April 5, 2018. Dkt. #4, pp.12-27. The Appeals Council denied review onJanuary 4, 2019. Dkt. #4, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on March 1, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court

should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a medically determinable impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 1, 2014; (2) plaintiff's rheumatoid or inflammatory arthritis and obesity were severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform medium work with the following limitations: occasional overhead reaching and climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds and no concentrated exposure to extreme heat, extreme cold, wetness or humidity; and (5) plaintiff was capable of working as an industrial cleaner, hospital service worker, or linen room attendant, each of which are unskilled, medium exertion work. Dkt. #4, pp.19-26.

Plaintiff argues that the ALJ's failure to address plaintiff's fibromyalgia warrants remand. Dkt. #5-1, pp.10-13.  More specifically, plaintiff argues that Dr. Chadha's longitudinal treatment notes satisfy the diagnostic criteria for fibromyalgia. Dkt. #5-1, p.11. Plaintiff also argues that it was error for the ALJ to fail to impose any limitations upon plaintiff's use of her hands in light of the objective medical evidence and plaintiff's complaints of hand pain. Dkt. #5-1, pp.13-19. Plaintiff requests remand for calculation of benefits because any limitation upon plaintiff's capacity for handling and fingering would require a finding of disability given plaintiff's advanced age, education and lack of transferable skills. Dkt. #5-1, pp.18-19. Given that plaintiff filed her application in 2015, plaintiff also argues that remand for further proceedings would impose a hardship upon plaintiff. Dkt. #5-1, p.20.

The Commissioner argues that substantial evidence supports the ALJ's determination that plaintiff retained the ability to perform medium exertion work. Dkt. #8-1, pp.11-18. The Commissioner argues that the ALJ addressed plaintiff's functional limitations, but notes that plaintiff was never diagnosed with and does not meet the criteria for a diagnosis of fibromyalgia. Dkt. #8-1, pp.12-15. The Commissioner also argues that the ALJ properly resolved the conflict between plaintiff's subjective claims of functional limitations with her hands and the objective medical evidence. Dkt. #8-1, pp.15-17.

Plaintiff replies that the Commissioner's *post hoc* rationalization of the ALJ's failure to evaluate plaintiff's pain is improper. Dkt. #9, pp.1-2. Moreover, plaintiff argues that there is sufficient evidence of fibromyalgia in the medical record to render the ALJ's failure to address it legal error. Dkt. #9, pp.2-3. Finally, plaintiff replies that all of the jobs identified as possibilities for plaintiff require significant handling and fingering, which is impaired by plaintiff's arthritis and documented in the medical record. Dkt. #9, pp.3-4.

Fibromyalgia is recognized as a medically determinable impairment where an acceptable medical source has diagnosed fibromyalgia and provided evidence to satisfy either the 1990 American College of Rheumatology ("ACR"), Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria and the physician's diagnosis is not inconsistent with other evidence. *Casselbury v. Colvin*, 90 F. Supp.3d 81, 93 (W.D.N.Y. 2015), *citing* Social Security Ruling ("SSR"), 12-2p, 2012

WL 3104869 (July 25, 2012). To satisfy the 1990 ACR Criteria, the physician must document: (1) a history of widespread pain - that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist), and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) - that has persisted for at least 3 months; (2) at least 11 positive tender points are documented both above and below the waist from 18 sites located on each side of the body; and (3) evidence that other possible causes of symptoms are excluded. SSR 12-2p, 2012 WL 3104869, at *2-3. Alternatively, the 2010 ACR Preliminary Diagnostic Criteria provides that fibromyalgia may be recognized as a medically determinable impairment where an acceptable medical source documents: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) other disorders that could cause these repeated manifestations of symptoms, signs or co-occurring conditions were excluded. *Id.* at *3. When the record lacks sufficient information to determine whether a plaintiff has a medically determinable impairment of fibromyalgia, an ALJ must take additional steps, such as re-contacting the plaintiff's treating physician or requesting a consultative examination, to resolve the insufficiency. *Id.* at *4.

In the instant case, plaintiff began treatment with Dr. Sunita Chadha at the WNY Rheumatology Center on April 29, 2015. Dkt. #4, p.350. While Dr. Chadha initially diagnosed plaintiff symmetrical inflammatory arthritis, most consistent with rheumatoid

arthritis (Dkt. #4, p.350), by December 20, 2015, Dr. Chadha observed diffuse joint and muscle pain which she opined could also represent myofascial pain. Dkt. #4, p.354. On March 30, 2016, Dr. Chadha opined that plaintiff also has features of myofascial pain symdrome/fibromyalgia (Dkt. #4, p.394), and on November 25, 2016, Dr. Chadha opined that a lot of the symptoms plaintiff was describing could be from fibromyalgia pain. Dkt. #4, p.407. On May 20, 2017, following examination by Dr. Chadha, Kathleen Cloutier, ANP-BC, at WNY Rheumatology Center, advised plaintiff's primary care physician that

> At the time for last visit the inflammatory arthritis appears to be well-controlled. She had continued to report diffuse arthralgias and myalgias which . . . would be consistent with fibromyalgia. . . . With the use of Lyrica she reports significant improvement in her overall symptoms. She reports reduced pain, and reduction in symptoms of numbness, tingling, burning *et cetera*. . . . For the inflammatory arthritis we have suggested switching to an intravenous medication which . . . would likely provide more relief of the joint symptoms . . . She continues to report diffuse arthalgias but of a lesser degree. She feels her symptoms are well managed at this point. . . . She does notice a lot of symptoms in the base of her thumbs bilaterally. She feels that this is worse with use. She notices reduced grip strength and difficulty opening jars.

Dkt. #4, p.434. On September 12, 2017, Dr. Chadha noted that plaintiff

> was doing well at the time of her last visit. Now she feels worse with worsening arthralgias and fatigue. It is unclear from her examination whether she is having a flareup of rehumatoid arthritis or fibromyalgia.

Dkt. #4, p.362. Dr. Chadha's treatment notes include consistent observations upon examination of tenderness to palpation in the biceps, elbows, thigh muscles and paracervical muscles; and notations that plaintiff's joints were tender to palpation in general throughout examination. Dkt. #4, pp.353, 357, 362, 389. 393, 398, 403, 407 &

412. Dr. Chadha also documents plaintiff's subjective complaints of fatigue, weakness fatigue, joint pain and muscle weakness in her fingers, hands, elbows, shoulders, lower back, hip, knees, ankles and feet, foggy brain, headaches and depression, Dkt. #4, pp.352, 356, 361, 388, 392, 397, 402, 406 & 411.

Despite the documented findings on examination and diagnosis of fibromyalgia by plaintiff's rheumatologist, the ALJ did not consider whether the criteria for a medically determinable impairment of fibromyalgia was satisfied. Instead, the ALJ relied upon a consultative examination which occurred prior to plaintiff's diagnosis of fibromyalgia and the absence of any objective support in the diagnostic imaging to determine that plaintiff's allegations of profound restriction in activities were significantly out of proportion to the evidence of record. Dkt. #4, p.25. More specifically, the ALJ determined that

> If the [plaintiff] were so limited that she could not stand or walk more than a few minutes and required the assistance of [a] cane, and can no longer effectively toilet or dress herself, it is not unreasonable to expect x-ray imaging showing some advancement in the degenerative disease, a new abnormality in the inflammatory markers laboratory testing, or at least some objective clinical deficits in range of motion or strength. The record does not provide such support for the [plaintiff's] allegations of a flare-up in September 2017 or, more importantly, the degree of pain and limitation alleged since 2014.

Dkt. #4, p.24. As the Court of Appeals for the Second Circuit has recognized, however, fibromyalgia can be disabling even though there are no objective tests which can conclusively confirm it. *Green-Younger v. Barnhart*, 335 F.3d 99, 108-109 (2d Cir. 2003) (recognizing that physical examinations will usually yield normal results - a full range of

motion, no joint swelling, as well as normal muscle strength and neurological reactions). Furthermore, because the symptoms of fibromyalgia are subjective, a failure to recognize fibromyalgia as a medically determinable impairment may adversely impact an ALJ's assessment of a plaintiff's credibility. *See Martinez v. Colvin*, 2018 WL 1626350, at *3 (W.D.N.Y. March 30, 2018) (recognizing that evidence of fibromyalgia may bolster credibility of subjective complaints).

The ALJ's failure to address evidence of fibromyalgia necessitates remand for further proceedings. *See Cook v. Comm'r of Soc. Sec'y,* 17-CV-6725, 2019 WL 2082305, at *2 (W.D.N.Y. May 13, 2019) (ALJ's failure to consider plaintiff's diagnosis of fibromyalgia was not harmless); *Grubbs v. Comm'r of Soc. Sec'y*, 18-CV-6050, 2019 WL 1298481, at *5 (W.D.N.Y. Mar. 21, 2019) (remanding for the ALJ to address whether plaintiff's diagnosis of fibromyalgia constitutes a medically determinable impairment); *Szefler v. Berryhill*, 16-CV-774, 2018 WL 6831156, at *6 (W.D.N.Y. Dec. 28, 2018) (ALJ's failure to address treating physician's diagnosis of fibromyalgia required remand). Upon remand, the ALJ shall consider the appropriate weight to afford the opinion of plaintiff's treating physician and, if necessary, further develop the record by re-contacting plaintiff's treating physician or otherwise obtaining sufficient information so as to properly assess whether plaintiff meets the criteria for fibromyalgia and, if she does meet the criteria, determine the impact of such impairment upon plaintiff's RFC. *See Villar v. Comm'r of Soc. Sec'y,* 19-CV-144, 2020 WL 1131225, at *4 (W.D.N.Y. Mar. 9, 2020)*; John v. Berryhill,* 17-CV-963*,* 2019 WL 2314620, at *3 (W.D.N.Y. May 31, 2019); *Cooper v. Comm'r of Soc. Sec'y*, 17-CV-

1058, 2019 WL 1109573, at *4-5 (W.D.N.Y. Mar. 11, 2019). Remand for calculation of benefits is not appropriate because, even assuming that plaintiff's diagnosis of fibromyalgia meets the criteria for a medically determinable impairment, a finding of disability is dependent upon consideration of the severity of symptoms and the limitations resulting from such impairment. *Maldonado v. Berryhill*, 16-CV-165, 2017 WL 946329, at *22 (S.D.N.Y. Mar. 10, 2017).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #5), is granted in so far as plaintiff seeks remand for further proceedings, and Commissioner's motion for judgment on the pleadings (Dkt. #8), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**July 29, 2020**

                                         *s/ H. Kenneth Schroeder, Jr.*
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**